In the Matter of the Claim of Lila M. Rue Erickson (Arising from the Death of Robert J. Rue, for compensation).

Lila M. Rue ERICKSON, Respondent,

v.

NORTH DAKOTA WORKMEN'S COMPEN-SATION BUREAU, Appellant.

No. 8078.

Supreme Court of North Dakota.

Sept. 10, 1963.

Leslie R. Burgum, Atty. Gen., and Myron E. Bothun, Asst. Atty. Gen., Bismarck, for appellant.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for respondent.

STRUTZ, Judge.

The plaintiff filed an application with the North Dakota Workmen's Compensation Bureau for benefits on account of the death of her husband, killed in a truck-automobile collision on September 11, 1959. Prior to the time that the deceased started on the journey alleged by the claimant to have been made in the course of business for his employer, he talked for some time with the claimant at their home, and, according to claimant's testimony, he gave no evidence of intoxication. He did no drinking in her presence at that time, although it is admitted that he drank intoxicating beverages almost daily.

The deceased left the family home in Fargo at about eight o'clock in the evening for Kathryn, North Dakota, where he was to interview a prospective employee. At a point approximately thirty-two miles west of Fargo, and about forty-five minutes after leaving his home, he was involved in a head-on collision with a truck. An eyewitness to the accident stated that the automobile of the deceased was being driven in a straight path and was not weaving on the highway, but that it was being driven at a high rate of speed. Skidmarks on the highway disclosed that the car of the decedent had been traveling in its proper lane on the highway; that decedent attempted to pass a vehicle ahead of him but apparently decided against it; and then, in pulling back into his own lane of travel, he hit the shoulder on the right side of the road, presumably losing control and swerving from the shoulder into the lane for oncoming traffic.

The deputy county coroner testified that she was requested by the highway patrolman investigating the accident to take a sample of the decedent's blood. She found it impossible to get blood from his veins or from his heart, but finally secured a sample from the thoracic cavity. The blood was obtained at about 12:30 a. m., or about three and one-half hours after the decedent's death. The container into which the blood was placed was not sealed. The coroner took the blood sample to St. John's Hospital about one and one-half hours after it was obtained, where it was given to an attendant who placed it in a refrigerator. The blood sample was removed from the refrigerator the following morning by a laboratory technician who analyzed it and determined that it had an alcoholic content in excess of the amount provided by our statute as indicating prima-facie evidence of intoxication.

The Workmen's Compensation Bureau, after taking testimony, issued its order dismissing the claimant's application and giving as the reason for such dismissal that the decedent's death was caused by willful intoxication, as indicated by such blood test. The Bureau further found that decedent's death was not fairly traceable to his employment. From the order of dismissal, the plaintiff filed notice of appeal to the district court.

The district court ruled that the results of the blood test were inadmissible in evidence. There being no other evidence to establish intoxication of the decedent, and the district court finding that the accident occurred in the course of the decedent's employment, the order of the Bureau dismissing the claimant's application was reversed and the claimant was allowed to participate in the Workmen's Compensation Fund. From judgment entered in the district court, the Workmen's Compensation Bureau has appealed to this court, demanding a trial de novo and a retrial of the entire case.

A number of questions are raised on this appeal. The first issue which we must decide is whether the results of a test of the decedent's blood, taken from his body after his death, was admissible in evidence to prove intoxication.

■ The Workmen's Compensation Act must be liberally construed to promote the ends intended to be secured by its enactment. Bordson v. North Dakota Work-

men's Compensation Bureau, 49 N.D. 534, 191 N.W. 839; Sec. 65-01-01, N.D.C.C.

■ The negligence of an employee will not bar recovery of compensation benefits. Pace v. North Dakota Workmen's Compensation Bureau, 51 N.D. 815, 201 N.W. 348.

■ The only grounds for denying a claim for injuries arising in the course of employment are set forth in Subsection 8 of Section 65-01-02 of the North Dakota Century Code. These grounds include injuries caused by the employee's willful intention to injure himself, or to injure another, and "any injury received because of the use of narcotics or intoxicants while in the course of the employment."

The test of the decedent's blood, as the results were submitted to the Workmen's Compensation Bureau at its hearing, disclosed that the alcoholic content of the decedent's blood at the time it was analyzed was in excess of the amount provided by our statute as indicating prima-facie evidence of intoxication. In other words, it is conceded that, if the blood test were properly made and the results of such test were admissible in evidence, decedent's blood contained sufficient alcohol to warrant a presumption of intoxication.

In determining whether the trial court properly overruled the Workmen's Compensation Bureau's finding of voluntary intoxication, which finding was based on the results of such blood test, it will be necessary for us to determine whether the results of such test were properly excluded by the trial court.

The respondent contends that the results of such blood test are inadmissible for at least two reasons:

1. That the blood was taken from the body of the decedent after his death, contrary to Section 39-20-03 of the North Dakota Century Code, which provided that any person who is dead shall be deemed to have withdrawn his consent for the taking of such blood test, and that, in such case, "the test or tests may not be given."

2. That no proper foundation was laid for the introduction of the results of such blood test, and that the results of such test were properly excluded by the trial court.

■ Let us assume, for the moment, without determining the question, that the taking of blood for the purpose of making an analysis of its alcoholic content from the body of the deceased was legal, and that the results of such test are not inadmissible in a civil action merely because the test was of blood taken from the deceased after death. We do not believe that the evidence of such test is admissible in evidence in any event. When blood taken from the body of a person is to be used as evidence to prove intoxication, it is not competent evidence unless it is first shown that it was in substantially the same condition at the time the test was performed as it was when the blood was taken from the body of the deceased. In other words, before the results of the test made of decedent's blood may be admitted in evidence to prove intoxication, it must be shown that there has been no material change in the condition of the blood since it was taken from the decedent's body. Here, the record discloses that the blood was withdrawn from the thoracic, or pleural, cavity of the decedent more than three hours after his death; that it was then put in a glass container with an ordinary cap and without sealing the container; and that it was then taken by the coroner to the emergency department of St. John's Hospital where it was given to an attendant with instructions that he place it in the refrigerator. The coroner did not see the attendant put the unsealed tube in the refrigerator, so we have no record as to whether that was done immediately or whether it was done after a long delay. The attendant was not called to testify, but the parties stipulated that, if he were called, he would testify that he did, in fact, place the container of blood in the refrigerator sometime prior to the follow-

ing morning. The record further discloses that the refrigerator in which the unsealed container was placed was accessible to any person who happened to be in that part of the hospital.

It was admitted by witnesses for the Bureau that the container could have been opened and tampered with by anyone between the time it was left in the laboratory refrigerator until the test was made the following day, and that there was no way of determining whether it had, in fact, been tampered with. The record further discloses that, on the following day, sometime between seven o'clock in the morning and noon, the laboratory supervisor in the hospital found a sample of blood in the refrigerator and analyzed it for alcoholic content, the container being labeled with the decedent's name. No evidence was introduced to show that the content of the unsealed container in which the blood had been placed was in the same condition when the laboratory supervisor made the test as it had been when the blood was withdrawn from the body of the decedent, some eight to twelve hours earlier.

When an object is being used in evidence to prove a fact with which it is related as of a previous time, it is not competent evidence unless it is first shown that such object is in substantially the same condition as it was at the time to which it is being related. Gutman v. Industrial Commission, 71 Ohio App. 383, 50 N.E.2d 187. Therefore, in this case, where the alcoholic content of the decedent's blood at the time of the accident is to be shown by a test of a sample of his blood, there must be positive evidence to show that the blood had not been tampered with and that, when the test was made, the blood analyzed was that which was taken from the body of the deceased. Mere delay will not destroy the evidentiary factor of an object if a proper foundation is laid. But before a material object may be admitted in evidence, it must be shown that there has been no substantial change in its condition since the time in issue, which in this case would require that there be evidence showing that the contents of the container into which the blood had been placed was the same substance that had been withdrawn from the body of the deceased and, except perhaps for clotting, that it was in substantially the same condition. Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952; White v. Keller, 188 Or. 378, 215 P.2d 986.

Since there is no evidence in the record to show that the blood analyzed was the same substance removed from the body of the deceased, and since the record affirmatively shows that it was in an unsealed container in a place where it could have been tampered with by any number of persons during the hours between its withdrawal from the decedent's body and the test, evidence of the results of such test was properly excluded by the trial court.

In this case, there is no other competent evidence by the Bureau to show intoxication. All of the eyewitnesses to the accident testified that the decedent was driving his car in a straight line without weaving. In other words, there is no other evidence to support the Bureau's finding of willful intoxication.

Having therefore determined that the evidence on which the Bureau based its finding of intoxication was inadmissible, and there being no other evidence in the record to prove intoxication, and the record disclosing that the accident did occur in the course of employment, the judgment of the district court is affirmed.

MORRIS, C. J., and ERICKSTAD, BURKE and TEIGEN, JJ., concur.