**John H. SALTER, Petitioner and Appellant,**

v.

**Walter HJELLE, N.D. Highway Commissioner, Respondent and Appellee.**

Civ. No. 870095.

Supreme Court of North Dakota.

Nov. 19, 1987.

As Corrected Dec. 9, 1987.

Ralph A. Vinje, Bismarck, for petitioner and appellant.

Robert E. Lane, Asst. Atty. Gen., Bismarck, for respondent and appellee.

LEVINE, Justice.

John H. Salter (Salter) appeals from a judgment of the Burleigh County district court which affirms the administrative hearing officer's decision suspending Salter's driver's license. We reverse.

Salter was arrested for driving under the influence (DUI). He was given an Intoxilyzer test by a certified chemical test operator. The test showed a blood-alcohol concentration in excess of 0.10%.

Salter requested and received a hearing. At the hearing the following evidence was received: State Toxicologist's approved method, testing officer's certified written report, list of certified chemical operators, and list of approved chemical testing devices. No operational checklist was offered. Neither the officer who conducted Salter's test nor the State Toxicologist testified.

Salter objected to the admission of the Intoxilyzer test because there was no showing it was fairly administered. The hearing officer overruled the objection and suspended Salter's driving privileges for ninety-one days.

Salter appealed to the district court, which affirmed the administrative suspension. Salter then appealed to this court.

The sole issue is whether the hearing officer erred in receiving into evidence Salter's Intoxilyzer test results. Salter contends that the Intoxilyzer results were inadmissible because there was no showing that the test had been fairly administered. We agree.

■ Section 39–20–07, NDCC, addresses the admissibility of Intoxilyzer test results in administrative proceedings. *Brandt v. N.D. State Highway Com'r,* 409 N.W.2d

645 (N.D.1987). Subsection 5 provides in part:

"5. The results of chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist...."

Subsection 6 provides in part:

"6. ... Upon approval of the methods or devices, or both, required to perform the tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of the approval with the highway commissioner and the clerk of the district court in each county and shall include in the record;

.     .     .     .     .

c. The operational checklist[1] and forms prescribing the methods currently approved by the state toxicologist in using the devices during the administration of the tests."

The purpose of § 39–20–07(5) and (6) is to ease the requirements for admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered. The legislature has struck a balance between procedural efficiency and substantive reliability.

■ The State Toxicologist's approved method sets out the correct procedure for conducting the Intoxilyzer test. In that document the State Toxicologist concludes:

"When the test is conducted according to this method, it is considered as fairly administered and the result obtained is scientifically accepted as accurate."

Thus, the Toxicologist tells us that when the approved method is followed, the test is both fairly administered and scientifically accurate.

In *Brandt v. N.D. State Highway Com'r, supra,* we analyzed what was necessary to establish fair administration. Under § 39–20–07, certified copies of the operational checklist and listings of approved chemical testing devices and certified operators are cumulatively sufficient to prove fair administration. *Id.* However, the statute does not make such evidence the exclusive means to establish fair administration and other evidence may be offered.

"Even if the requirements of 39–20–07(6) are not met, chemical test results can be used as evidence if the proponent supplies other proof that the test was fairly administered." *Brandt* at 647.

Other proof of fair administration may be provided by testimony of the State Toxicologist or a showing that the test was performed according to the approved method. *Schirado v. North Dakota State Highway Com'r,* 382 N.W.2d 391 (N.D.1986). Here, there is no checklist showing the test was performed according to the approved method and no testimony to that effect. The question thus becomes whether there is other evidence to establish fair administration.

Notwithstanding *Brandt* and *Schirado,* and NDCC § 39–20–07, the commissioner argues that merely introducing the test records satisfies the commissioner's burden to prove the test was fairly administered. He contends that NDCC § 39–20–05(4) makes admissible the Intoxilyzer test records without proof that the test was fairly administered.

Section 39–20–05(4) provides:

"4. At a hearing under this section, the regularly kept records of the commissioner may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, any copy of a certified copy of an analytical report of a blood, urine, or saliva sample received by the commissioner from the office of the state toxicologist or a law enforcement officer, *a*

---

**1.** The checklist identifies the various steps taken in administering a chemical test. *Kobilansky v.*

*Liffrig,* 358 N.W.2d 781 (N.D.1984).

*certified copy of the checklist and test records received by the commissioner from a certified breath test operator,* and any copy of a certified copy of a certificate of the office of the state toxicologist relating to approved methods, devices, operators, materials, and checklists used for testing for blood alcohol concentration received by the commissioner from the office of the state toxicologist or the clerk of district court, are regularly kept records of the commissioner. [Emphasis supplied.]

Section 39–20–05(4) allows admission of the regularly kept records of the commissioner. These records establish their contents without further foundation. Section 39–20–05(4) connects the checklist with the test records. It designates a certified copy of that pair of documents as a regularly kept record of the commissioner entitled to prima facie evidentiary effect. A test record without a checklist is not similarly treated.

■ In interpreting a statute, we examine not only every word of the statute, *Brenna v. Hjelle*, 161 N.W.2d 356 (N.D. 1968), but also all subsections of a statute, with the view that the entire statute is intended to be effective. NDCC § 1–02–38(2). In particular, we believe that § 39–20–05(4) must be read together with § 39–20–05(2).

Section 39–20–05(2) provides in pertinent part:

"2. ... For purposes of this section, a copy of a certified copy of an analytical report of a blood, urine, or saliva sample from the office of the state toxicologist, *or a certified copy of the checklist and test records* from a certified breath test operator establish prima facie the blood alcohol concentration shown therein...." [Emphasis supplied.]

■ Section 39–20–05(2) addresses directly the evidentiary effect to be afforded test records. It too links the test records with the checklist. In order for a test record to establish prima facie its resulting blood alcohol concentration, it must be accompanied by a certified copy of the checklist. Without a checklist the test records

are not prima facie evidence of their results.

■ We believe the Legislature expressed its intent, through the clear language of these statutory provisions, that a checklist is both the necessary and sufficient means to render test results admissible without further foundation (assuming, of course, that the other documents described in § 39–20–07(6) are offered). We conclude that, absent a checklist, the test results may not be introduced into evidence without some other showing of fair administration.

Our construction of § 39–20–05(2) and (4) thus harmonizes it with the fair administration requirement of § 39–20–07 and gives effect to both statutes. It is, of course, our duty to construe statutes, if possible, "to give effect to both ... without doing violence to either." *Stradinger v. Hatzenbuhler*, 137 N.W.2d 212, 216 (N.D.1965).

The commissioner argues that *Geiger v. Hjelle*, 396 N.W.2d 302 (N.D.1986), supports his argument that test results need no foundation as to fair administration. However, the issue in *Geiger v. Hjelle* was not whether the test results were properly admitted. Geiger conceded the test results were properly in evidence, but argued they could not be used to prove refusal to submit to the test. We held in *Geiger* that a test record may be used to show refusal to submit to testing. *Geiger* does not stand for the proposition that test records need no foundation as to fair administration.

■ The commissioner also argues that the disputable presumption of regular performance of official duty found in NDCC § 31–11–03(15) provides sufficient evidence of fair administration. The commissioner urges that the testing officer should be presumed to have followed the approved method. We have applied a presumption of regularity to official acts of the State Toxicologist. *State v. VandeHoven*, 388 N.W. 2d 857 (N.D.1986). We have never applied this presumption to testing officers and decline to now. To do so would effectively eliminate the requirement of § 39–20–07(5)

that the commissioner prove fair administration.

The commissioner next argues that the officer's "sworn report" proves fair administration of the test. He reasons that a "sworn report" is a regularly kept record of the commissioner and thus establishes prima facie its contents without further foundation.

What was called a "sworn report" until July 21, 1987, is now a "certified written report." *See* S.L. 1987, ch. 460, § 11. The certified written report is best described in NDCC § 39-20-03.1(3):

"3. The arresting officer, within five days of the issuance of the temporary operator's permit, shall forward to the commissioner a certified written report in the form required by the commissioner and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39-08-01, or equivalent ordinance, that the person was lawfully arrested, that the person was tested for blood alcohol concentration under this chapter, and that the results of the test show that the person had a blood alcohol concentration of at least ten one-hundredths of one percent by weight...."

The certified written report is a regularly kept record of the commissioner. NDCC § 39-20-05(4); *Kobilansky v. Liffrig*, 358 N.W.2d 781 (N.D.1984). As such, its contents are entitled to prima facie effect. *Id.* The contents are, in pertinent part:

"[John Henry Salter] provided a specimen of breath for testing under Chapter 39-20, N.D.C.C., to determine the alcohol or drug content at Burleigh Co. Jail, Bismarck, N.D."

It is clear that the certified written report does not address itself to the issue of fair administration, let alone establish it. We conclude the officer's certified written report does not provide the necessary foundation for Salter's test record under § 39-20-07(5).

The commissioner next argues that certified copies of the approved method and the lists of certified chemical test operators and approved chemical testing devices cumulatively establish fair administration of the test, without further evidence.

Under § 39-20-05(4), certified copies of the State Toxicologist's approved method and the lists of certified chemical test operators and approved chemical testing devices, are regularly kept records of the commissioner, and thus are prima facie evidence of their contents. However, their contents do not show that the requirements of § 39-20-07(5) are met, *i.e.*, that the test was fairly administered or that the test was performed according to approved methods and with approved devices. We conclude that these documents alone do not provide the necessary foundation for test results.

The commissioner also relies on *Pladson v. Hjelle*, 368 N.W.2d 508 (N.D.1985), for the proposition that the approved method, along with the two lists filed by the toxicologist, prove fair administration of the test. This reliance on *Pladson* is misplaced. In *Pladson* we held that there was sufficient evidence of fair administration. That evidence contained a certified copy of the Breathalyzer operational checklist. There is no comparable checklist in this case.

The commissioner argues that the Intoxilyzer test record should substitute for a checklist. However, the Intoxilyzer record does not establish that the approved method was followed in its entirety. It does not indicate compliance with at least these requirements of the approved method:

(1) "At this point the operator should place a clean mouthpiece on the end of the breath tube";

(2) "The operator should remove the mouthpiece from the breath tube and dispose of it";

(3) "Before attaching a simulator to the Intoxilyzer blow through the simulator for a few seconds"; and

(4) "The operator should place the clean mouthpiece on the breath tube."

The State Toxicologist has not informed us whether any step in the approved method is dispensable in reaching a scientifically accurate result or in establishing fair administration. Therefore, we are unable to conclude that fair administration is established without a showing that the testing officer performed every step in the approved method, or proof that the missing steps do not significantly affect the test results. *See* NDCC § 39–20–07(5). *See, e.g., State v. Guthmiller*, 350 N.W.2d 600 (N.D.1984) (State Toxicologist testified various errors of testing operator were insignificant).

We hold that because the commissioner failed to establish that the test was fairly administered, the hearing officer erred in admitting the Intoxilyzer test results. There was insufficient remaining evidence to warrant suspension of Salter's driving privileges.

Accordingly, the district court judgment affirming the hearing officer's decision to suspend Salter's driving privileges is reversed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.