STATE of North Dakota, Plaintiff
and Appellee,

v.

Daryl NYGAARD, Defendant
and Appellant.

Cr. No. 870364.

Supreme Court of North Dakota.

July 19, 1988.

Vincent A. LaQua, State's Atty., Fessenden, for plaintiff and appellee. Submitted on brief; no appearance.

GIERKE, Justice.

Daryl Nygaard (Nygaard) appeals from a conviction of driving while under the influence of intoxicating liquor in violation of Section 39–08–01 of the North Dakota Century Code. We reverse and remand.

On June 14, 1987, at approximately 1:30 a.m., Highway Patrolman Darryl Bulzomi stopped Nygaard for speeding. Officer Bulzomi testified that while following the vehicle driven by Nygaard he observed it swerving within its own lane. Officer Bulzomi further testified that Nygaard had blood-shot eyes, smelled of alcohol, swayed as he walked, admitted drinking and had slurred speech.

Officer Bulzomi had Nygaard perform an alert test and some field sobriety tests. After concluding that Nygaard was under the influence of alcohol, Officer Bulzomi placed him under arrest and took him to the Carrington Hospital Emergency Room to have a blood sample drawn. Nygaard consented to the withdrawal of blood and signed a hospital consent to have his blood drawn.

Brenda Loken, the registered nurse who drew the blood sample from Nygaard, testified that she took a sterile syringe and needle, put a tourniquet on the arm, cleansed the area with water and then withdrew 10 cc's of blood. Brenda Loken further testified that after the blood was drawn she released the tourniquet, removed the needle from the arm, injected the blood into the vial held by Officer Bulzomi and applied a sterile gauze over the puncture site.

Officer Bulzomi testified that he put the rubber stopper back on the vial and shook the vial to mix it. Officer Bulzomi further testified that after Form 104 was completed he placed it and the vial in a container

for shipment and mailed the container to the State Toxicologist the following morning.

At trial, the results of the blood test were admitted into evidence over Nygaard's objections that the approved method for drawing the blood sample was not followed and that no chain of custody was established. Nygaard was found guilty of driving while under the influence of intoxicating liquor in violation of Section 39–08–01 of the North Dakota Century Code.[1] On November 19, 1987, a judgment of conviction was entered. This appeal followed.

The dispositive issue on appeal involves the adequacy of the chain of custody and whether or not the trial court erred in admitting the results of the blood-alcohol test. Nygaard argues that the results of the blood-alcohol test should have been excluded because Officer Bulzomi failed to properly seal and label the vial as required in the directions for sample collection issued by the State Toxicologist.

In *Erickson v. North Dakota Workmen's Comp. Bureau*, 123 N.W.2d 292, 296 (N.D.1963), this Court stated the foundational requirement for the admissibility of blood-alcohol results as follows:

"When an object is being used in evidence to prove a fact with which it is related as of a previous time, it is not competent evidence unless it is first shown that such object is in substantially the same condition as it was at the time to which it is being related. *Gutman v. Industrial Commission*, 71 Ohio App. 383, 50 N.E.2d 187 [1942]. Therefore, in this case, where the alcoholic content of the decedent's blood at the time of the accident is to be shown by a test of a sample of his blood, there must be positive evidence to show that the blood had not been tampered with and that, when the test was made, the blood analyzed was that which was taken from the body of the deceased. Mere delay will not destroy the evidentiary factor of an object if a proper foundation is laid. But before a material object may be admitted in evidence, it must be shown that there has been no substantial change in its condition since the time in issue, which in this case would require that there be evidence showing that the contents of the container into which the blood had been placed was the same substance that had been withdrawn from the body of the deceased and, except perhaps for clotting, that it was in substantially the same condition."

In *State v. Hanson*, 345 N.W.2d 845, 849 (N.D.1984), we recognized that there is a possibility that a blood sample may become contaminated before it reaches the laboratory for chemical analysis.[2] In *State v.*

---

1. Section 39–08–01, N.D.C.C., provides in part as follows:

"39–08–01. Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty.

"1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

b. *That person is under the influence of intoxicating liquor.*

c. That person is under the influence of any drug or substance or combination of drugs or substances to a degree which renders that person incapable of safely driving.

d. That person is under the combined influence of alcohol and any other drugs or substances to a degree which renders that person incapable of safely driving.

The fact that any person charged with violating this section is or has been legally entitled to use alcohol or other drugs or substances is not a defense against any charge for violating this section, unless a drug which predominantly caused impairment was used only as directed or cautioned by a practitioner who legally prescribed or dispensed the drug to that person." [Emphasis added.]

2. In *State v. Hanson*, 345 N.W.2d 845, 849 (N.D. 1984), we stated as follows:

"Our case law recognizes the possibility that a blood sample may become contaminated before it reaches the laboratory for chemical analysis. *See Wanna v. Miller*, 136 N.W.2d 563 (N.D.1965); *Erickson v. North Dakota Workmen's Compensation Bureau*, 123 N.W.2d 292 (N.D.1963). In *Wanna v. Miller, supra*, the plaintiff sued the owner of a tavern under the Dram Shop Act for serving liquor to an intoxicated customer who later was involved

*Hanson, supra,* we concluded that a sufficient foundation was provided by the State to admit the results of the blood-alcohol test where the officer testified that the blood sample was withdrawn under very clean and sterile conditions and described the procedures utilized in marking, handling and mailing the blood sample to the office of the State Toxicologist.

Also, in *State v. Reil,* 409 N.W.2d 99, 103 n. 4 (N.D.1987), we noted that compliance with the directions for sample collection and submission on Form 104 amply provides proof of chain of custody.

The directions on Form 104 for sample collection and submission for blood specimens read as follows:

### "FOR BLOOD OR OTHER FLUID SPECIMENS

"1. Use only a sterile, dry, clean syringe, and needle and a non-alcoholic, non-volatile, skin disinfectant.

"2. Remove stopper from glass vial before filling. These vials do not have a vacuum.

"3. Place 10 ml of whole blood or other liquid specimen into the vial and replace the stopper.

"4. Immediately invert the vial several times to dissolve the chemical and prevent clotting.

"5. *Seal the vial with one layer of tape and label the vial with the name of the subject and the arresting officer.*

"6. Fill out this form, wrap it around the vial, and place in the mailing container.

"7. Place cotton or tissue paper on top of the vial. Replace the metal screw cap.

"8. Seal mailing container with the long, narrow label by putting it over the cap and attaching it to the cardboard sides.

"9. Affix the return address label around the mailing container over the ends of the seal.

"Forward the sample to the State Toxicologist without delay. If delay is unavoidable refrigerate the urine sample to minimize loss of alcohol & drugs. Use sufficient postage when sent by mail.

"The specimen containers for urine and blood contain sodium azide, and sodium fluoride & potassium oxalate, respectively. These chemicals are poisonous and care should be taken in handling the vial." [Emphasis added.]

■ Because we assume that the State Toxicologist has reasons for establishing directions for sample collection and submission, we conclude that when there is a deviation from the established directions, the State must establish that there were sufficient indicia of reliability in the collection and submission of the blood sample to permit the receipt of the results of the blood-alcohol test.

■ In the instant case, it is undisputed that the officer failed to "[s]eal the vial with one layer of tape and label the vial with the name of the subject and the arresting officer" as required in step 5 of the directions for sample collection and submission on Form 104. Also, no testimony was provided by the State to verify that the

---

in an automobile collision with the plaintiff. The State Toxicologist testified at trial concerning the results of a chemical analysis of a blood sample taken from the customer. In response to the defendant's contention that there was no foundation for the State Toxicologist's testimony and that the blood sample 'was not administered as directed by law pursuant to Chapter 39–20,' we said:

'The blood specimen was extracted from [the customer's] vein near the elbow by ... an x-ray technician and assistant laboratory technician at the Good Samaritan Hospital at Rugby. Although he did not remember specifically taking the specimen of blood, he said that he had checked the hospital records and found that he had done so. He explained the usual procedure by which blood for this purpose is extracted, marked, and mailed to the State Toxicologist. *The procedure appeared proper, and our attention has not been drawn to any irregularity. The extraction of blood having been voluntary and proper safeguards having been taken in the extraction, marking, handling, mailing, receiving, and analysis of the specimen,* we find no merit in the objection of no foundation for [the State Toxicologist's] testimony in regard to the alcohol content of the specimen....' [Emphasis added.] 136 N.W.2d at 570."

blood sample tested was the same blood collected from the defendant.

We believe that the trial court erred in admitting the results of the blood-alcohol test. Next, we must determine whether or not such error was harmless error under Rule 52(a) of the North Dakota Rules of Criminal Procedure.[3]

In *State v. Micko*, 393 N.W.2d 741, 746 (N.D.1986), we stated our objective in reviewing error that occurs during a trial as follows:

"Our review of trial court error is guided by Rule 52, N.D.R.Crim.P., which defines errors as harmless and obvious. Rule 52(a), (b), N.D.R.Crim.P. Review is limited to a determination of whether or not the error committed prejudiced the substantial rights of the accused. Rule 52(a), N.D.R.Crim.P. If no prejudice resulted, the error may be disregarded. Rule 52(a), N.D.R.Crim.P.

"Our objective in reviewing this conviction is to determine whether the error was so prejudicial that substantial injury resulted and a different decision probably would have resulted absent the error. *State v. Mehralian*, 301 N.W.2d 409, 418 (N.D.1981); *State v. Manning*, 134 N.W. 2d 91, 99 (N.D.1965). Not every error is prejudicial, however, and unless the mistake had some effect on the jury's verdict, the conviction will stand. *Manning, supra.*"

After reviewing the entire record in this case and considering the probable effect of the error, we believe that substantial prejudice resulted from the admission of the blood-alcohol test results into evidence. Therefore, we cannot conclude that the error constituted harmless error under Rule 52(a) of the North Dakota Rules of Criminal Procedure.

Accordingly, the criminal conviction is reversed and the case is remanded for a new trial.

ERICKSTAD, C.J., and LEVINE, J., concur.

VANDE WALLE, J., concurs in the result.

MESCHKE, Justice, dissenting.

I respectfully dissent.

I would affirm both of these convictions for reasons similar to those given in my dissent in *State v. Reil*, 409 N.W.2d 99, 105 (N.D.1987). Today's rulings are hypertechnical ones on foundational, evidentiary concerns for blood tests. Under NDREv 104(b) and 901, our standard of review of an evidentiary ruling should be whether the trial court abused its discretion. Since I believe that there was no abuse of discretion in admitting these blood tests as evidence and that any doubts about the authenticity of these blood sample reports go to their evidentiary weight, I respectfully dissent.

---

**3.** Rule 52, N.D.R.Crim.P., provides as follows:
"RULE 52. HARMLESS ERROR AND OBVIOUS ERROR
  "(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"(b) Obvious Error. Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."