**STATE of North Dakota, Plaintiff and Appellee,**

v.

**C.J. SIVESIND, Defendant and Appellant.**

**Cr. No. 880189.**

Supreme Court of North Dakota.

April 19, 1989.

Schoppert Law Firm, Minot, for defendant and appellant; argued by Thomas K. Schoppert, Minot.

Joseph H. Kubik, States Atty., Dickinson, for plaintiff and appellee. Submitted on brief; no appearance.

GIERKE, Justice.

This is an appeal by C.J. Sivesind from a conviction of driving while under the influence of intoxicating liquor in violation of Section 39–08–01 of the North Dakota Century Code. We reverse and remand.

On the evening of August 18, 1987, Officer Wallace stopped a vehicle for speeding on Highway 8 north of Halliday, North Dakota. Officer Wallace asked the driver, Sivesind, to step out of the vehicle. Officer Wallace observed that Sivesind staggered as he exited the vehicle. Also, Officer Wallace detected a strong odor of alcohol on Sivesind's breath. Sivesind was asked to perform some field sobriety tests which he failed. Officer Wallace placed Sivesind under arrest for driving under the influence of an intoxicating liquor. Sivesind was subsequently transported to St. Joseph's Hospital in Dickinson for a blood-alcohol test. The test showed a blood-alcohol concentration of 0.23% by weight.

A jury trial was held on April 15, 1988. At trial, a document which included Form 107, the analytical report of the State Toxicologist, and a portion of Form 104, the sample collection sheet of the officer, was admitted into evidence over the objection by Sivesind's attorney that the document was not a complete document because it did not include the State Toxicologist's directions for sample collection and submission printed on the reverse side of Form 104. Sivesind was found guilty of driving while under the influence of intoxicating liquor in violation of Section 39–08–01 of the North Dakota Century Code. A judgment of conviction was entered and this appeal followed.

Sivesind raises three issues on appeal. Initially, Sivesind contends that the trial court erred in allowing into evidence the document containing the results of the blood-alcohol test. Additionally, Sivesind contends that without the directions for blood sample collection and submission being admitted into evidence, he was denied the right of confrontation against the State's witnesses and evidence. Finally, it is Sivesind's contention that the trial court erred in not allowing him to comment to the jury on the lack of directions as to the issue of weight and credibility. Sivesind therefore maintains that the judgment of the trial court should be reversed and the case remanded for a new trial.

Because it is dispositive of this appeal, our review focuses on whether or not the trial court erred in admitting into evidence the document containing Form 107 and Form 104 when the directions for blood sample collection and submission promulgated by the State Toxicologist were not included and when no other evidence was presented regarding compliance with such directives.

The admissibility of blood sample test results are governed by subsections (5), (8) and (10) of Section 39–20–07 of the North Dakota Century Code which provide as follows:

"39–20–07. Interpretation of chemical tests. Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol, drugs, or a combination thereof in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible. For the purpose of this section:

\*     \*     \*     \*     \*     \*

"5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown

to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test.

\* \* \* \* \* \*

"8. A certified copy of the analytical report of a blood, urine, or saliva analysis issued by the office of the state toxicologist must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter.

\* \* \* \* \* \*

"10. A signed statement from the nurse or medical technician drawing the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of such evidence may be required."

In *Salter v. Hjelle,* 415 N.W.2d 801, 803 (N.D.1987), this Court determined that the purpose of Section 39–20–07 "is to ease the requirements for admissibility of chemical test results while insuring that the test upon which the results are based is fairly administered. The legislature has struck a balance between procedural efficiency and substantive reliability." This Court further stated in *Salter v. Hjelle, supra,* that "[t]he State Toxicologist's approved method sets out the correct procedure for conducting" the chemical test and that "when the approved method is followed, the test is both fairly administered and scientifically accurate."

In *State v. Schwalk,* 430 N.W.2d 317, 322 (N.D.1988), this Court stated that "a certified copy of blood test results is admissible pursuant to subsections (8) and (10) only if fair administration of the test has been established in accordance with subsection (5)." This Court further stated in *State v. Schwalk, supra,* that "[i]n light of this statutory scheme, the State Toxicologist has drafted Form 104 to be used when a blood sample is drawn for blood alcohol testing. The backside of Form 104 contains the directions for collection and submission of blood samples, including a nine-step process."

As quoted in *State v. Reil,* 409 N.W.2d 99, 103 n. 4 (N.D.1987), the directions on the reverse side of Form 104 for sample collection and submission for blood specimens read as follows:

" 'FOR BLOOD OR OTHER
FLUID SPECIMENS

" '1. Use only a sterile, dry, clean syringe, and needle and a non-alcoholic, non-volatile, skin disinfectant.

" '2. Remove stopper from glass vial before filling. These vials do not have a vacuum.

" '3. Place 10 ml of whole blood or other liquid specimen into the vial and replace the stopper.

" '4. Immediately invert the vial several times to dissolve the chemical and prevent clotting.

" '5. Seal the vial with one layer of tape and label the vial with the name of the subject and the arresting officer.

" '6. Fill out this form, wrap it around the vial, and place in the mailing container.

" '7. Place cotton or tissue paper on top of the vial. Replace the metal screw cap.

" '8. Seal mailing container with the long, narrow label by putting it over the cap and attaching it to the cardboard sides.

" '9. Affix the return address label around the mailing container over the ends of the seal.

" 'Forward the sample to the State Toxicologist without delay. If delay is unavoidable refrigerate the urine sample to

minimize loss of alcohol & drugs. Use sufficient postage when sent by mail. " 'The specimen containers for urine and blood contain sodium azide, and sodium flouride & potassium oxalate, respectively. These chemicals are poisonous and care should be taken in handling the vial.' "

This Court has determined that the sample collection and submission directions on Form 104 "essentially comprise two components: the actual procedure for collecting and preserving the blood sample and the directions for submitting the sample to the State Toxicologist." *State v. Schwalk, supra.* The first of the two components ensures that the scientific accuracy and reliability of the chemical test are not affected by improper collection or preservation of the blood sample. *State v. Schwalk, supra.* The second component of the directions provides in effect an evidentiary shortcut for establishing chain of custody. *State v. Schwalk, supra; see also State v. Nygaard,* 426 N.W.2d 547 (N.D.1988); *State v. Reil, supra.*

We noted in *State v. Reil, supra,* that pursuant to this Court's reading of B. Quick, *I Only Had Two Beers: A North Dakota Prosecutor's Manual for DUI Cases,* 333 (1984, revised 1986) (published by the North Dakota Attorney General's Office) it would appear that the person who fills out the form to be completed by the specimen collector must comply with the State Toxicologist's directions for sample collection and submission. We further noted in *State v. Reil, supra,* that an improvement in Form 104 could be made with the inclusion of a provision wherein the specimen collector certifies that he or she followed the State Toxicologist's directions and placed the properly drawn and sealed container in the regular mailing process.

■ When the State Toxicologist has promulgated methods and procedures for conducting the requisite test, fair administration is established only by proof that those methods were scrupulously complied with or by expert testimony. *State v. Schwalk, supra* at 323. Without a written certification that each and every directive for sample collection promulgated by the State Toxicologist has been followed, Form 104 does not on its face establish fair administration of the chemical test and therefore the State must prove fair administration by other evidence. *State v. Schwalk, supra.*

■ In the instant case, the State attempted to prove compliance with the approved methods and to meet its burden of establishing fair administration of the test by introducing testimony of the arresting officer. However, the officer's testimony did not establish that he performed each and every step of the test in accordance with the detailed procedures promulgated by the State Toxicologist. Furthermore, no other evidence was provided by the State regarding compliance with the State Toxicologist's directives for blood sample collection and submission.

■ We do not believe that the State has shown that the test was administered in accordance with the State Toxicologist's established methods and procedures for blood sample collection and submission. Accordingly, we believe that the State has failed to prove fair administration of the test. Therefore, we conclude that the trial court erred in admitting into evidence the results of the blood-alcohol test. We must next determine whether or not such error was harmless error under Rule 52(a) of the North Dakota Rules of Criminal Procedure.[1]

This Court's objective in reviewing error that occurs during a trial was stated in *State v. Micko,* 393 N.W.2d 741, 746 (N.D. 1986), as follows:

"(b) Obvious error. Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

---

1. Rule 52, N.D.R.Crim.P., provides as follows: "RULE 52. HARMLESS ERROR AND OBVIOUS ERROR
   "(a) Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"Our review of trial court error is guided by Rule 52, N.D.R.Crim.P., which defines errors as harmless and obvious. Rule 52(a), (b), N.D.R.Crim.P. Review is limited to a determination of whether or not the error committed prejudiced the substantial rights of the accused. Rule 52(a), N.D.R.Crim.P. If no prejudice resulted, the error may be disregarded. Rule 52(a), N.D.R.Crim.P.

"Our objective in reviewing this conviction is to determine whether the error was so prejudicial that substantial injury resulted and a different decision probably would have resulted absent the error. *State v. Mehralian,* 301 N.W.2d 409, 418 (N.D.1981); *State v. Manning,* 134 N.W. 2d 91, 99 (N.D.1965). Not every error is prejudicial, however, and unless the mistake had some effect on the jury's verdict, the conviction will stand. *Manning, supra."*

After a thorough review of the record in this case and considering the probable affect of the error, we believe that substantial prejudice resulted from the admission into evidence of the blood-alcohol test results. *See State v. Nygaard, supra.* Therefore, we cannot conclude under Rule 52(a) of the North Dakota Rules of Criminal Procedure that the error constituted harmless error.

Accordingly, the criminal conviction is reversed and the case is remanded for a new trial.

ERICKSTAD, C.J., and LEVINE, J., concur.

VANDE WALLE, Justice, concurring specially.

The record in this case reveals considerable posturing insofar as the responsibility for producing the list of directions for collection and submission of blood or other fluid specimens is concerned. Although the trial court gave defense counsel an opportunity to cross-examine the officer on the issue of the directions, defense counsel, presumably for tactical reasons, chose not to. The record reveals the prosecutor believed it was not the State's responsibility to introduce testimony that the officer complied with the directions, but rather defense counsel's burden. I agree with the result reached by the majority simply because this is a criminal case and the statutes and our previous caselaw indicate the prosecution is responsible for introducing the evidence necessary to prove the State's case.

I cannot refrain from observing that there were some rather simple alternatives available, even at the time of trial and defense counsel's objection to the introduction of the test results, to introduce this evidence. Section 39–20–07(5), N.D.C.C., provides in part that the State Toxicologist "is authorized to approve satisfactory devices and methods of chemical analysis ..." Section 39–20–07(6) provides for filing by the State Toxicologist a written record of approval with the clerk of the district court in each county, and subsection 7 of the same section provides that "Copies of the records referred to in subsections 5 and 6, certified by the clerk of the district court, must be admitted as prima facie evidence of the matters stated in the records." Assuming Form 104, including the directions on the back thereof, was filed with the clerk of the district court, it seemingly would have been a simple matter to request a short recess, obtain the form, admit it into evidence, and proceed to question the officer as to whether or not he complied with those directions applicable to his role in obtaining and mailing the specimen.

In addition, the directions on Form 104 were recited in footnote 4 of *State v. Reil,* 409 N.W.2d 99 (N.D.1987), a decision which, the record reveals, was referred to and relied upon by the State, defense counsel, and the trial judge during the course of the trial. Defense counsel contends the directions in *Reil* may have been different from those in effect at the time the specimen in this case was obtained. Although defense counsel's position may be seen as unduly technical, once the issue was raised I believe it was the State's obligation to correct any deficiency in its evidence.

MESCHKE, Justice, concurring.

For reasons explained in my dissent in *State v. Schwalk,* 430 N.W.2d 317, 325

(N.D.1988), I would hold that the trial court properly admitted this test result. "Generally, lack of proof about compliance with one particular procedure should reflect only on the weight of a test report, not its admission. Only if the variance is confirmed to be critical to its evidentiary worth, to the satisfaction of the trial judge, [who has 'wide discretion ... to control the introduction of evidence'], should the test report be excluded." *Id.* at 326.

But, for like reasons, I would also hold that the trial court abused its discretion in this case by not allowing Sivesind's counsel to comment to the jury on the lack of directions as affecting the weight and credibility of the test.

Therefore, I concur in the remand for a new trial.