2013 ND 124

**Scott Robert WILSON, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

Nos. 20120425-20120428.

Supreme Court of North Dakota.

July 18, 2013.

Patrick S. Rosenquist, Grand Forks, N.D., for petitioner and appellant.

Jessica J. Binder, State's Attorney, Stanton, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Scott Wilson appeals a district court judgment denying his petition for post-conviction relief. Concluding the district court's findings are not clearly erroneous, we affirm.

I

[¶ 2] Wilson was charged with four counts of issuing a check with insufficient funds or credit on July 27, 2010. Wilson requested court-appointed counsel, which the district court denied, finding he was not indigent. A trial was set for January 27, 2011, but Wilson later requested a change of plea, and the trial was rescheduled for February 15. The court instructed Wilson he could re-apply for court-appointed counsel or retain a private attorney.

[¶ 3] Before the jury trial began, Wilson told the court he had tried to retain an attorney three weeks earlier, calling "five or six of them," and had offered to pay five hundred to a thousand dollars above the retainer, but each attorney declined. Wilson provided no evidence other than his statement that he had made efforts to retain an attorney. He stated he had again applied for court-appointed counsel, but he said his application was denied because he was not indigent. This application and denial do not appear in the record before us. The court told Wilson:

Here's the problem with the Court. We were set for a jury trial already once in this case on January 24th. . . . You were not ready to go at that point and indicated you would be doing a change of plea. Then you changed your mind, which you have every right to do, and you wanted your jury trial reinstated. So approximately three weeks later we now have that jury trial. This has been charged out since August. So you have known since August that you have been facing these charges, yet you haven't done anything about it. The fact that you waited until the last minute and couldn't get someone to handle it, unfortunately is not something the Court can look at.

Wilson told the court he understood what a pretrial hearing is. Representing himself, Wilson questioned a potential juror about her relationship with his wife, and the court removed that juror for cause. When asked by the court whether he needed to review the jury instructions, Wilson replied, "I mean, it's pretty simple—or not simple, but black and white and to the point." The court explained to Wilson when the instructions would be read, and educated him about his choosing whether or not to testify. Wilson questioned witnesses and gave a closing statement. Af-

ter the trial, he told the court he thought a pre-sentence investigation would be appropriate before his sentencing hearing.

[¶ 4] On February 15, 2011, a jury found Wilson guilty of all counts of issuing checks without sufficient funds. After a pre-sentence investigation, the district court sentenced him to two consecutive five-year terms of imprisonment with two years suspended and two consecutive terms of 30 days in jail with 20 days suspended and required he pay restitution. Wilson was not advised of his right to appeal at the time of sentencing. Wilson appealed to this Court, which dismissed his appeal as untimely. On May 24, 2012, representing himself, Wilson petitioned for post-conviction relief, alleging he should have been appointed counsel. Wilson again requested court-appointed counsel, which the district court granted. Through his court-appointed counsel, Wilson filed a supplement to his application, alleging the district court erred in denying him counsel at all stages of the proceeding in violation of the Sixth Amendment to the United States Constitution. He also argued that, under *Peguero v. United States*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), the district court had a duty to inform him of his right to appeal and his sentence was cruel and unusual.

[¶ 5] At his post-conviction hearing, Wilson testified he requested court-appointed counsel, but the court, finding he was not indigent, had denied his request. Wilson continued to represent himself and claimed to have made efforts to hire private counsel. He testified he contacted three attorneys, all of whom declined because of the limited time available before trial. He testified that he said many times he did not know what he was doing and that he never once said he waived his right to counsel. He testified that after he reviewed the transcript of his sentencing hearing, he was not informed of his right to appeal. Wilson applied for court-appointed counsel for his first appeal to this Court, and the district court denied his request.

[¶ 6] The district court denied Wilson's application for post-conviction relief. The court found, under *Peguero*, the trial court's failure to inform Wilson of his right to appeal was harmless error. The court found Wilson knew he was not entitled to court-appointed counsel, because he was not indigent and he showed no evidence other than his testimony that he had tried to retain counsel. The court concluded Wilson failed to take responsibility for his situation, and his conduct at trial constituted the functional equivalent of a voluntary waiver of his right to counsel. Finally, the court found Wilson's sentence was lengthy, but not grossly disproportionate, because of Wilson's substantial criminal history.

[¶ 7] Wilson argues he was prejudiced because the trial court failed to notify him of his right to appeal and the district court erred in concluding he waived his right to counsel.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 29–32.1–03. Wilson's appeal is timely under N.D.R.App.P. 4(d). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–32.1–14.

II

A

■ [¶ 9] "Post-conviction relief proceedings are civil in nature and are governed by the North Dakota Rules of Civil Procedure." *Waslaski v. State*, 2013 ND 56, ¶ 7, 828 N.W.2d 787. The district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless they are clearly erroneous under

N.D.R.Civ.P. 52(a). *Odom v. State,* 2010 ND 65, ¶ 10, 780 N.W.2d 666. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made. *Sambursky v. State,* 2008 ND 133, ¶ 7, 751 N.W.2d 247.

[¶ 10] Wilson argues he was prejudiced when the trial court failed to notify him of his right to appeal under N.D.R.Crim.P. 32. Rule 32(a)(3) provides:

> After imposing sentence in a case that has gone to trial, the court must advise the defendant of the defendant's right to appeal and of the right of a person who is unable to pay the costs of an appeal to apply for appointment of counsel for purposes of appeal. The court is under no duty to advise the defendant of any right of appeal when sentence is imposed following a plea of guilty.

Although Wilson argued in his post-conviction relief hearing that *Peguero* should be applied, here he argues the district court should not have applied it but should have applied the standard this Court set in *State v. Carmody,* 243 N.W.2d 348 (N.D. 1976), which he did not argue to the district court.

[¶ 11] In *Carmody,* decided decades before *Peguero,* this Court held, "The failure to advise a convicted defendant of his right to appeal requires remand for resentencing and reinstatement of the right of appeal." 243 N.W.2d at 350. In *Peguero,* the United States Supreme Court held that "a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." 526 U.S. at 27, 119 S.Ct. 961. The State argues we should adopt the *Peguero* standard.

[¶ 12] In *Carmody,* this Court looked to the explanatory note of N.D.R.Crim.P. 37, which provided, "The provision in Rule 32 which requires that the defendant be advised of his right to appeal ... is clearly a necessary part of a valid sentence and until it is given, the 10–day period for taking an appeal cannot begin to run because there is no valid sentence in existence." 243 N.W.2d at 350. *See also Paige v. United States,* 443 F.2d 781 (4th Cir.1971); *United States v. Benthien,* 434 F.2d 1031 (1st Cir.1970); *Nance v. United States,* 422 F.2d 590 (7th Cir.1970); and *United States v. Smith,* 387 F.2d 268 (6th Cir.1967).

[¶ 13] The Eighth Circuit Court of Appeals, in *United States v. Drummond,* disagreed with the four circuit court cases cited in *Carmody* and above and concluded a Rule 52(a), Fed.R.Crim.P., harmless error analysis should instead be used:

> We believe that disturbing the finality of a judgment by reinstating a defendant's right to appeal entails similarly high social costs that are acceptable only when a defendant has actually been deprived of the right to appeal.... [W]e decline to adopt the per se approach to Rule 32(a)(2) violations and instead hold that Rule 52(a) requires the reviewing court to determine whether the Rule 32(a)(2) violation actually prejudiced the defendant's right to appeal.

903 F.2d 1171, 1174 (1990). In *Peguero,* the United States Supreme Court wrote to the importance of Rule 32:

> The requirement that the district court inform a defendant of his right to appeal serves important functions. It will often be the case that, as soon as sentence is imposed, the defendant will be taken into custody and transported elsewhere, making it difficult for the defendant to maintain contact with his

attorney.... In addition, if the defendant is advised of the right by the judge who imposes sentence, the defendant will realize that the appeal may be taken as of right and without affront to the trial judge, who may later rule upon a motion to modify or reduce the sentence. Advising the defendant of his right at sentencing also gives him a clear opportunity to announce his intention to appeal and request the court clerk to file the notice of appeal, well before the 10–day filing period runs.

526 U.S. at 26–27, 119 S.Ct. 961 (internal citation omitted). The court held, "A violation of Rule 32(a)(2), however, does not entitle a defendant to collateral relief in all circumstances. Our precedents establish, as a general rule, that a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief *only when the defendant is prejudiced by the court's error.*" *Id.* at 27, 119 S.Ct. 961 (emphasis added). When a defendant has "independent knowledge of the right to appeal," he is "not prejudiced by the trial court's omission." *Id.* at 29–30, 119 S.Ct. 961.

[¶ 14] Rule 52(a), N.D.R.Crim.P., provides, "Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded." A Rule 52(a) review "is limited to a determination of whether or not the error committed prejudiced the substantial rights of the accused. If no prejudice resulted, the error may be disregarded." *State v. Sivesind,* 439 N.W.2d 530, 534 (N.D.1989) (quotation and internal citation omitted).

The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial. It also prevents setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.

*State v. Just,* 2006 ND 225, ¶ 7, 723 N.W.2d 541 (internal quotations and citations omitted).

[¶ 15] We have consistently held a defendant must show he is prejudiced by a court's error in a Rule 52(a) harmless error analysis. *See State v. Aguero,* 2010 ND 210, ¶ 31, 791 N.W.2d 1 (improper use of a defendant's silence is considered under a harmless error analysis); *State v. Bertram,* 2006 ND 10, ¶ 32, 708 N.W.2d 913 (drafting of an insufficient charging document is subject to a harmless error analysis); *State v. Thompson,* 552 N.W.2d 386, 390 (N.D.1996) (failure to provide reasonable advance notice of the admission of a prior bad act under N.D.R.Ev. 404(b) is subject to a harmless error analysis); *State v. Huber,* 555 N.W.2d 791, 793 (N.D. 1996) (applying a harmless error standard to jury instruction).

■ [¶ 16] Wilson argued the *Peguero* standard to the trial court and made no reference to *Carmody.* The district court applied the *Peguero* standard in its order. *Peguero's* harmless error standard mirrors our rule and most of our relevant case law. Our N.D.R.Crim.P. 52(a) mirrors the federal rule, Fed.R.Crim.P. 52(a), making the federal court's interpretation persuasive. *See State v. Thompson,* 2010 ND 10, ¶ 21, 777 N.W.2d 617. We adopt the holding of the United States Supreme Court in *Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), that a court's failure to advise a defendant of his right to appeal after sentencing is sufficient grounds for relief only when the defendant is prejudiced by the court's error; to the extent it is inconsistent, our holding in *Carmody* is overruled.

[¶ 17] We next decide whether Wilson was prejudiced by not having the opportunity of a direct appeal. " 'Our objective in reviewing this conviction is to determine whether the error was so prejudicial that substantial injury resulted and a different decision probably would have resulted absent the error.' " *Sivesind*, 439 N.W.2d at 534 (quoting *State v. Micko*, 393 N.W.2d 741, 746 (N.D.1986)).

[¶ 18] Wilson had independent knowledge of his right to appeal. At his postconviction evidentiary hearing, Wilson testified he briefly had court-appointed counsel for his appeal but neither he nor his attorney filed for an extension of time to make his appeal timely. The record shows he was "represented by counsel and had remedies available to appeal the decision that it was untimely, and he didn't do that." Wilson has previously appealed to this Court. *See State v. Wilson*, 2004 ND 51, 676 N.W.2d 98.

[¶ 19] We cannot discern why the district court's failure to inform Wilson of his right to appeal *after* sentencing makes his prior sentence erroneous. Our review of the entire record shows Wilson had independent knowledge of his right to appeal and he was not prejudiced by the district court's omission. The court's error is harmless, and we conclude the district court's finding is not clearly erroneous.

### B

[¶ 20] Wilson next argues the district court erred in concluding he waived his right to counsel and denying his request for court-appointed counsel.

A criminal defendant's right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 12 of the North Dakota Constitution. The right to court-appointed counsel is, however, neither ... absolute, nor free. Under N.D.R.Crim.P. 44(a), an indigent defendant is entitled to court-appointed counsel in all felony and misdemeanor cases if the potential punishment includes imprisonment. This is a limited right, requiring the defendant to establish indigency and thus entitlement to appointment of counsel. There is no legal reason to appoint counsel for someone who can afford and obtain his own.

*City of Grand Forks v. Corman*, 2009 ND 125, ¶ 8, 767 N.W.2d 847 (internal quotations and citations omitted).

Under our criminal caselaw, defendants who represent themselves must voluntarily, knowingly, and intelligently relinquish the benefits of counsel. Whether a defendant's waiver of the right to counsel was knowing and intelligent depends on the facts and circumstances of each case. To intelligently and knowingly choose self-representation, a defendant should be aware of the dangers and disadvantages of proceeding without the skill and experience of counsel. The record must establish that the choice was made "with eyes open."

*Adoption of S.A.L.*, 2002 ND 178, ¶ 17, 652 N.W.2d 912 (internal citations omitted).

A defendant need not make unequivocal statements indicating a voluntary desire for self-representation. The defendant's conduct may be the functional equivalent of a voluntary waiver of the right to counsel. We have concluded that a manipulative pattern of obstructing the legal process is the functional equivalent of a voluntary waiver of right to counsel.

*Id.* ¶ 18 (internal citations omitted). "Although the trial judge does not have to engage in a 'specific colloquy about the dangers and disadvantages of self-representation,' it must be clear from the record

'that the defendant knew what he was doing.'" *Corman*, 2009 ND 125, ¶ 15, 767 N.W.2d 847 (quoting *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 15, 597 N.W.2d 406).

This right to be represented by counsel may be waived or forfeited, but first the district court must inform the defendant of the right and afford a reasonable opportunity for the defendant to secure counsel. [3 Wayne R.] LaFave [et al., *Criminal Procedure* ] § 11.3(c), at 691–92 [ (3d ed.2007) ]. The failure of a defendant to secure counsel after being advised of the right and after being given reasonable opportunity has been characterized as a constructive waiver by some courts, *e.g., Nation v. State*, 445 N.E.2d 565, 569 (Ind.1983), and as a forfeiture by other courts. *E.g., Fischetti v. Johnson*, 384 F.3d 140, 146 (3d Cir.2004).

*Corman*, at ¶ 12.

[¶ 21] Rule 44(a)(1), N.D.R.Crim.P., provides, "An indigent defendant facing a felony charge in state court is entitled to have counsel provided at public expense to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right." The district court found Wilson was not indigent. Our rule for court-appointed counsel for non-indigent defendants provides, "The court may appoint counsel to represent a defendant at the defendant's expense if the defendant is unable to obtain counsel and is not indigent." N.D.R.Crim.P. 44(a)(3). " 'There is no legal reason to appoint counsel for someone who can afford and obtain his own.'" *Corman*, 2009 ND 125, ¶ 8, 767 N.W.2d 847 (quoting *State v. DuPaul*, 527 N.W.2d 238, 241 (N.D.1995)).

[¶ 22] Though Wilson's original request for court-appointed counsel is not found in this record, Wilson's subsequently-denied March 2012 request for counsel is in the record and was available to Wilson before this appeal. His denied request contains the following comment from the district court:

Under NDRCrim[P] 44(a) even if you don't meet the income guidelines, the judge may be required to find counsel for you if you are unable to obtain attorney services. To be eligible for this service you must provide written proof that at least two (2) attorneys have refused to represent you.

Wilson did not provide the district court, nor does he provide this Court, with any such written proof.

[¶ 23] The district court, at a December pre-trial hearing, asked Wilson whether he would be requesting court-appointed counsel. Wilson replied he would be continuing on his own. The court explained to Wilson he had the right to court-appointed counsel, and if he could not afford it, he could request that the court appoint an attorney. He then told the court he was waiving that right. Wilson acknowledged he was neither promised anything nor threatened in waiving his right and was doing so of his own free will.

[¶ 24] Before his February trial began, Wilson commented on the record he had followed the court's instructions three weeks earlier and had tried to retain an attorney, but none would take his case. He said he had come to the district court a week before trial and had applied for a court-appointed attorney, but was denied because he made too much money. The district court, noting Wilson waited until the last minute to attempt to acquire counsel, stated:

I gave you both those options because those are the options that are basically there for anybody who comes before the Court, whether they retain their own or apply for court-appointed counsel. I

had you do them both right away in the beginning so that you had both those options available to you. However, we will be proceeding today with trial on these four cases.

[¶ 25] The district court instructed Wilson about questioning potential jurors, giving an opening statement, and jury instructions and gave him many opportunities to ask the court questions. Before his trial, Wilson told potential jurors, "I am representing myself." He questioned potential jurors, even getting one potential juror removed for cause because of her relationship with his wife. Wilson made appropriate objections at the trial and cross-examined witnesses. He told the court he thought a pre-sentence investigation would be appropriate. When sentencing him, the district court reminded Wilson of his extensive criminal history in this state. The record shows Wilson's attempts to retain counsel were made at the last minute, and his claims were unsupported by any evidence other than his testimony.

[¶ 26] In addition, after the court denied his request for appointed counsel, Wilson provided no written evidence he had sought independent counsel. Before trial he told the court he had contacted five or six attorneys. He testified at his post-conviction relief hearing he had tried contacting three attorneys, all of whom declined because of the limited time available before trial.

[¶ 27] The district court found Wilson "failed to take responsibility for the situation" by not seeking or acquiring independent counsel. The court concluded Wilson's "conduct evidences a pattern of obstructing the legal process and constitutes the functional equivalent of a voluntary waiver of his right to counsel" because the "facts and circumstances of Mr. Wilson's case evidence that even absent a specific warning on the record he knowingly and intelligently waived his right to representation."

[¶ 28] Our review of the record shows the district court's finding that Wilson waived his right to counsel is supported by the evidence and is not clearly erroneous. Wilson's failure to secure counsel after being advised of the right and given a reasonable opportunity to do so constitutes his waiver of that right. We conclude the court did not err in denying Wilson's request for court-appointed counsel.

### III

[¶ 29] We affirm the district court's judgment denying Wilson's application for post-conviction relief.

[¶ 30] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

DANIEL J. CROTHERS, J., concurs in the result.