Jerome Mike SCHIRADO, Petitioner and Appellant,

v.

The NORTH DAKOTA STATE HIGH-WAY COMMISSIONER and Elden G. Spier, Director, Drivers License Division, State Highway Department, Respondent and Appellee.

Civ. No. 11071.

Supreme Court of North Dakota.

Feb. 20, 1986.

Hagen, Quast & Alexander, Beulah, for petitioner and appellant, argued by Larry W. Quast.

Robert E. Lane, Asst. Atty. Gen., Bismarck, for respondent and appellee.

LEVINE, Justice.

This is an appeal by Jerome M. Schirado from a district court judgment affirming the North Dakota State Highway Commissioner's suspension of his driving privileges pursuant to North Dakota Century Code ch. 39–20. We reverse.

Schirado was arrested for driving while under the influence of intoxicating liquor. He was given two tests on the Intoxilyzer device to determine his blood alcohol concentration. Due to faulty operation of the Intoxilyzer, the first test was not completed and consequently, the results were not recorded. The second test recorded Schirado's blood alcohol concentration at 0.17 percent. Following an administrative hearing the Commissioner suspended Schirado's driving privileges for one year. The suspension was affirmed by the district court and Schirado appealed.

In suspending Schirado's driving privileges the Commissioner's hearing officer concluded that the Intoxilyzer test had been fairly administered to Schirado. NDCC § 39–20–05. The issue here is whether or not there was sufficient evidence to warrant this conclusion. NDCC § 39–20–06.

Fair administration of a test may be established in either of two ways: through the State Toxicologist's testimony or by a showing that the test was performed according to the State Toxicologist's Approved Method of administering the test. NDCC § 39–20–07; *Moser v. North Dakota State Highway Com'r*, 369 N.W.2d 650 (N.D.1985).

The State Toxicologist did not testify at Schirado's hearing. Consequently, fair administration of the Intoxilyzer test could only be established by a showing that the test was performed according to the Approved Method.

The relevant portion of the Approved Method provides:

"If the printed Intoxilyzer test record is illegible press the 'Start Test' switch. When the display reads 'Insert Test Record' place a new test record in the Intoxilyzer. The printer will reprint all the test information on the new test record and feed it out of the instrument. Remove the second test record from the instrument and transfer the information requested on the lower half of Form 106–I from the first card to the second card and retain both for evidentiary purposes."

Schirado contends that the test was not performed in accordance with the Approved Method and consequently, the hearing officer erred in concluding that Schirado had been fairly tested. We agree.

While administering the first test to Schirado the Intoxilyzer operator realized the machine was not legibly printing the test results and cancelled the test. This procedure does not conform with the Approved Method. Had the operator followed the Approved Method and completed the test (despite the printing malfunction) the Intoxilyzer could have reprinted the test results on a new test record card and preserved this information for evidentiary purposes.

Failure to abide by the Approved Method renders the accuracy and reliability of the test results doubtful without explanatory testimony by the State Toxicologist. *Mos-*

*er, supra.* In this instance we simply do not know the reason for, or the significance of, the malfunction in the first test. The malfunction may have been attributable to either a defect in the Intoxilyzer or the officer's inability to properly operate the device, either defect rendering the second test suspect.

There is no dispute that the Approved Method was not followed. Without explanatory testimony by the State Toxicologist, *see, e.g., State v. Puhr,* 316 N.W.2d 75 (N.D.1982), the only way for the hearing officer to conclude that the second test was accurate was to assume so. This cannot be done. The hearing officer's conclusion that a test was fairly administered must be supported by adequate factual findings, not assumptions. NDCC § 39–20–06. Therefore, we hold that there was insufficient evidence to warrant the hearing officer's conclusion that Schirado's Intoxilyzer test was fairly administered.

Accordingly, the district court judgment affirming the Commissioner's hearing officer's decision to suspend Schirado's driver's license is reversed.

GIERKE and VANDE WALLE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

The Legislature has stated that the result of chemical analysis of the blood, breath, saliva, or urine of a person arrested for driving or being in actual physical control of a motor vehicle while under the influence of alcohol or drugs is to be received in evidence "when it is shown that the sample was properly obtained and the test was fairly administered, *and if the test is shown to have been performed according to methods* and with devices *approved by the state toxicologist,* ..." Section 39–20–07(5), N.D.C.C. [Emphasis supplied.] As Justice Levine has noted in the majority opinion, the State Toxicologist has prescribed a method to be followed if the printed test record is illegible. That method was not followed in this instance.

The dissenting opinion concludes that the failure to follow the procedure goes to the weight, not the admissibility, of the evidence. But that is contrary to what the statute says. Unless we are prepared to say that a determination of admissibility of evidence in these matters is solely the prerogative of the judicial branch of government and controlled by the rules of evidence adopted by this court, I must agree with the majority opinion because the officer did not follow the method prescribed by the State Toxicologist and, by virtue of Section 39–20–07(5), the results of the test are not admissible.

The dissenting opinion apparently attempts to explain away the statutory requirement on the basis that it is the second, not the first, test which the Highway Commissioner relied upon. However, that would always be true where the result of the first test was aborted for whatever reason. Such a rationale would make the approved method quoted in the majority opinion essentially meaningless, i.e., regardless of whether or not the method was followed in the first test, if it is the second test that is relied upon failure to follow the prescribed method goes only to the weight, not the admissibility, of the second test.

MESCHKE, Justice, dissenting.

As in *Moser v. North Dakota State Highway Commissioner,* 369 N.W.2d 650 (N.D.1985), the message of the majority opinion is that any sloppiness in administering a blood alcohol test will be viewed as affecting its competency and reliability, rather than its weight as evidence. Again, as a general proposition, I can concur in that message. "Short-cut" evidence must carefully comply with the statutory conditions if it is to be admitted for the adverse administrative action of suspension of driving privileges.

The problem in this case is that the test used, the second test, was "shown to have been performed according to methods and with devices approved by the state toxicologist," as N.D.C.C. § 39–20–07 requires. It is the aborted first test that was deficient,

but it is the satisfactory second test that is being condemned.

It is true that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" under Rule 403, N.D.R.Ev. But, it does not follow that a test fairly administered must be excluded from evidence because its probative value is outweighed by the danger of unfair prejudice from a preceding test which was not fairly administered. The hearing officer admitted into evidence and relied on the second test. He did not rely on the aborted first test.

The bungled circumstances of the first test may bear upon the weight to be given to the second test. I would not fault a hearing officer who declined to suspend driving privileges because he found the circumstances of multiple tests sufficiently unreliable to decline to suspend driving privileges. Compare N.D.R.Ev. Rule 406, on habit and routine practice. But, neither can I fault a hearing officer who found a properly performed test sufficient.

Since I do not consider "the evidence insufficient to warrant the conclusion reached by the ... hearing officer," N.D. C.C. § 39-20-06, I would affirm.

ERICKSTAD, C.J., concurs.

ERICKSTAD, Chief Justice, concurring in the dissenting opinion of Justice MESCHKE.

I concur in Justice Meschke's dissent, but I would have preferred, had I been able to obtain the agreement of a majority of our Court, to have remanded this case to the North Dakota State Highway Commissioner for a further evidentiary hearing at which time the State Toxicologist could have been examined concerning the effect of the abortive first test on the second test with appropriate opportunity for cross examination as well. In my view, the public's interest in safe highways is as great as Mr. Schirado's interest in maintaining his driving privileges.

The provisions of Section 28-32-18, N.D. C.C., would appear to permit such a procedure had an appropriate application been filed by the Commissioner disclosing that the additional evidence sought to be introduced was material and that reasonable grounds existed for the failure to adduce such evidence originally at the administrative hearing. Such an application should normally be made not to our Court but to the trial court. Unfortunately, such an application was not made to either the trial court or to this Court and, accordingly, agreement to remand is unachievable. *See Insurance Services Office v. Knutson*, 283 N.W.2d 395 at 400 (N.D.1979).