**CITY OF WILLISTON, North Dakota, Plaintiff and Appellee,**

v.

**James L. MILLER, Defendant and Appellant.**

Cr. No. 1211.

Supreme Court of North Dakota.

April 16, 1987.

Margy Bonner, City Atty., Williston, for plaintiff and appellee.

Thomas K. Schoppert, New Town, for defendant and appellant.

VANDE WALLE, Justice.

James Miller appealed from the jury verdict of the county court of Williams County which found him guilty of driving while under the influence of intoxicating liquor or with a blood-alcohol content of at least ten one-hundredths of one percent in violation of an ordinance of the City of Williston equivalent to Section 39–08–01, N.D.C.C. We affirm.

Miller was arrested on July 3, 1984, for driving while under the influence of alcohol. The officer who administered the Breathalyzer test used an operational checklist which was dated January 1, 1975.[1] The test results indicated that Miller had a blood-alcohol content of 0.14 percent. Miller was charged and convicted in the Williston municipal court of driving while under the influence of alcohol. He appealed his conviction to the county court of Williams County, and the trial resulted in the inability of the jury to agree on a verdict. During the retrial of the case, Miller questioned the introduction of the results of the Breathalyzer test. He claimed that the operational checklist used by the officer who administered the Breathalyzer test was not a "currently approved form" as required by Section 39–20–07, N.D.C.C. The trial judge ruled that the operational checklist and, in turn, the results of the Breathalyzer test were admissible. The jury convicted Miller, and he appealed.

On appeal Miller reasserts his claim that the operational checklist used by the officer who administered the Breathalyzer test was not currently approved by the State Toxicologist and that the results of the test therefore were inadmissible.[2]

Section 39–20–07(5), N.D.C.C., provides: "The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the cer-

---

1. The operational checklist contains a series of steps which the officer must take when administering the Breathalyzer test. At trial, pursuant to Section 39–20–07, N.D.C.C., the results of the test must be admitted if it is shown that the test was performed according to methods approved by the State Toxicologist. The operational checklist serves to ensure that the officer performed the test properly.

2. Miller cites *Schirado v. North Dakota State Highway Com'r*, 382 N.W.2d 391 (N.D.1986), and *Moser v. North Dakota State Highway Com'r*, 369 N.W.2d 650 (N.D.1985), as support for his position. Both *Schirado* and *Moser* were cases in which we held the results of the tests were inadmissible because the officer administering the test did not follow the *approved methods* of the State Toxicologist. In this case, Miller claims the test results are inadmissible because *the checklist used was not currently approved.*

tificate upon demand of the person requested to take the chemical test."

Section 39–20–07(6), N.D.C.C., provides, in part:

"... Upon approval of the methods or devices, or both, and techniques required to perform the tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of the approval with the clerk of the district court in each county and shall include in the record:

.    .    .    .    .

"c. The operational check list and forms prescribing the methods and techniques currently approved by the state toxicologist in using the devices during the administration of the tests."

At the time of trial, there were three operational checklists on file with the district court:

1. A modification of Form 106 (Operational Checklist) dated November 1984 with an attached memo;

2. A Breathalyzer operational checklist, Form 106, dated January 7, 1983; and

3. A Breathalyzer operational checklist, Form 106, dated January 1, 1975.

The officer used the operational checklist which was dated January 1, 1975. The checklist which was dated November 1984 was not even in existence at the time of the arrest on July 3, 1984, and therefore is not relevant to this case. An officer cannot use a checklist which has not yet been approved and is not in existence when he administers the Breathalyzer test.

In regard to the remaining two checklists which were on file, we observe that the 1975 form was currently approved at the time of the arrest. In a memo issued on January 10, 1983, the State Toxicologist specifically referred to the 1975 form, and stated:

"The *old form is still valid* and will be used as long as the supply lasts. So please retain the old form (Breathalyzer Operational check lists, Form 106) *dated*

*Jan. 1, 1975,* in your *current Files."* [Emphasis added.]

Not only was the 1975 checklist currently approved by the State Toxicologist at the time of the arrest, there are no substantive differences between the 1975 form and the 1983 form.

The verdict of the jury is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.