**CITY OF FARGO, Plaintiff and Appellee,**

v.

**Debora J. KOMULAINEN, Defendant and Appellant.**

Cr. No. 900224.

Supreme Court of North Dakota.

March 5, 1991.

**611**

Erik R. Johnson, Asst. City Atty., Fargo, for plaintiff and appellee; submitted on brief.

Leslie Johnson–Soetebier, Fargo, for defendant and appellant; submitted on brief.

GIERKE, Justice.

Debora Komulainen appeals from a judgment of conviction finding her guilty of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor with a blood alcohol content of .10% or greater. We affirm.

On February 16, 1990, a radio dispatch directed Officers David Boe and Alwood Schalesky to 1419 4th Avenue North in Fargo to check out a person allegedly slumped over the steering wheel of a motor vehicle blocking a driveway to an apartment complex parking lot. The police officers found Debora Komulainen sleeping in her locked vehicle, stretched out on the front seat with her head on the passenger side. She was using her coat for a pillow and was covered with a blanket. The keys were in the ignition. The radio was playing and the heater fan was blowing but the engine was not running. Conflicting testimony was given concerning whether the ignition key was turned to the "on" position or the "auxiliary" position.

The police officers unsuccessfully tried to awaken Komulainen by tapping on the window. They then entered the vehicle through the use of a slim jim. Komulainen sat up and attempted to start the vehicle, but she was stopped by the police officers.

The police officers testified that Komulainen had an odor of alcohol and was unsteady on her feet. At the scene, she failed field sobriety tests and an A.L.E.R.T. test. Komulainen requested a blood test for which she was taken to Dakota Hospital. The blood test result was introduced into evidence, showing that Komulainen had a blood alcohol content of .18%.

Komulainen argues on appeal that the motor vehicle was "inoperable" and that therefore she could not be in "actual physical control" and further that the blood test was inadmissible because the city failed to show that the test was "fairly administered".

Komulainen testified that she had been having problems with her car that day and more specifically that the car was idling too rapidly. Komulainen further testified that she told a friend, James Parraut, a certified auto mechanic, that she would bring her car to his house at approximately 10:00 p.m. that evening so he could check it out. Parraut was not at home when Komulainen arrived at approximately 9:00 p.m., so she left the car in the driveway and walked to the 4–10 Lounge.

Parraut testified that he came home at approximately 10:30 p.m., saw Komulainen's car in the driveway and decided to take a look at the acceleration linkage. He testified that he removed the distributor cap to check the timing advance and, leaving it disassembled, went looking for Komulainen. Komulainen testified that she had a beer and 3 or 4 mixed drinks before returning to Parraut's house at about 11:00 p.m. She found that Parraut was not there, so she got into her car, locked all of the doors and went to sleep.

After Komulainen's arrest, her vehicle was impounded. The next day Komulainen and Greg Eskelson picked up her car and she testified that when she started it, it did the same thing that prompted her to ask Parraut to check it out. She further testified that Eskelson did "something underneath the hood". The testimony was unclear as to what exactly Eskelson did.

The jury was instructed that: "A person is 'in actual physical control' of a vehicle within the meaning of these instructions when the vehicle is *operable* and he is in position to manipulate one or more of the controls of the vehicle that causes it to move or affects its movements in some manner or direction". (Emphasis added). The City objected to this instruction argu-

ing that the word "operable" needed clarification and requested that it be deleted from the instruction, however, no other "actual physical control" instruction was submitted to the court for consideration. The trial court ruled that the inclusion of the word "operable" did not disadvantage the City in that it becomes a fact question for the jury to determine. The jurors were further instructed that although they were the sole judges of questions of fact, it was their duty to accept the law as given by the court and to apply the law to the facts determined by them.

■ We must assume, without acceptable proof to the contrary, that the jury followed the instructions given by the judge. *See, Powers v. Martinson*, 313 N.W.2d 720 (N.D.1981). Therefore, we conclude that because the jury returned a guilty verdict it must have found Komulainen's vehicle "operable". In criminal actions the weight of the evidence and the credibility of the witnesses are questions for the jury, and where there is substantial evidence to support the verdict, even though it may be contradicted by the defendant, it will not be disturbed on appeal. *State v. Williams*, 150 N.W.2d 844 (N.D. 1967). Our examination of the evidence leads us to conclude that the verdict is in accordance with and is supported by substantial evidence.

■ Komulainen also argues that the city failed to show that the blood test was fairly administered, because the police officer failed to refrigerate the blood. Blood sample test results are admissible under Section 39–20–07 N.D.C.C., only after the proponent establishes fair administration of the test. Fair administration may only be established through proof of compliance with the State Toxicologist's directions which go to the scientific accuracy of the test or through expert testimony establishing the scientific accuracy of the test. *Schwind v. Dept. of Transportation*, 462 N.W.2d 147 (N.D.1990).

Officer Boe testified that he followed the State Toxicologist's directions on Form 104. There is nothing in the record before us to indicate that the State Toxicologist requires blood samples to be refrigerated.

Komulainen failed to offer any evidence to contradict the evidence of fair administration of the test under Section 39–20–07, N.D.C.C. The trial court may properly refuse to allow evidence of the test result if there is evidence that the test was not properly obtained or fairly administered. If Komulainen wished to discredit the test results with evidence that failure to refrigerate the blood sample would affect the accuracy of the test, it was her responsibility to produce such evidence at the time of trial. *See, City of Stanley v. Earsley*, 463 N.W.2d 920 (N.D.1990). We conclude that Komulainen has failed to demonstrate that the blood test was not fairly administered. Thus, the trial court properly admitted the test results into evidence.

We affirm.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.