Tyler A. PRICE, Appellant,

v.

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION DIRECTOR, Appellee.

Civ. No. 900390.

Supreme Court of North Dakota.

May 7, 1991.

Darold A. Asbridge, P.C. (argued), Bismarck, for appellant.

Gregory B. Gullickson (argued), Asst. Atty. Gen., Bismarck, for appellee.

GIERKE, Justice.

Tyler A. Price has appealed from a district court judgment affirming the North Dakota Department of Transportation Director's decision suspending Price's driving privileges for 364 days. We reverse and remand.

Officer Donlin, Bismarck Police Department, arrested Price for driving while under the influence of intoxicating liquor. An Intoxilyzer test administered by Officer Ellefson indicated that Price had a blood alcohol content of .14 percent by weight.

An administrative hearing pursuant to § 39-20-05, N.D.C.C., was held on June 4, 1990. The hearing officer admitted the Intoxilyzer test result into evidence over the objection of Price's attorney. At the conclusion of the hearing, the hearing officer issued findings of fact, conclusions of law, and his decision suspending Price's driving privileges for 364 days. The district court affirmed the suspension and Price appealed to this court. The only issue on appeal is whether or not the hearing officer properly admitted the Intoxilyzer test result into evidence.

Under § 39-20-05(2), N.D.C.C., one of the issues at Price's administrative hearing was whether his Intoxilyzer test results showed that he had a blood alcohol concentration of at least ten one-hundredths of one percent by weight. Section 39-20-07(5), N.D.C.C., provides for the admissibility of the results of a chemical analysis of a driver's blood, breath, saliva or urine to determine blood alcohol content:

"The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist."

The State Toxicologist's Approved Method To Conduct Breath Test With Intoxilyzer provides in part:

"After the sample chamber has been cleared, and the room air test has been completed by the instrument, the display will scroll 'Please Attach Simulator and Depress Start Test Switch' followed by a flashing directive of 'Attach Simulator'. Before attaching the simulator to the Intoxilyzer blow through the simulator for a few seconds, then attach the simulator to the simulator vapor port on the Intoxilyzer. The proper operating temperature for the simulator is 34.0 ± .2°C. Write down the simulator temperature on the Form 106-I, and depress the 'Start Test' switch."

Officer Ellefson testified that he did all of the procedures required by the Approved Method, but did not perform them all in the sequence specified in the Approved Method. He testified that he wrote down the temperature of the simulator before he blew into the simulator and attached it to the Intoxilyzer. The State Toxicologist did not testify at the hearing. Neither Ellefson nor any other witness testified as to the effect that Ellefson's deviation from the Approved Method might have had on the reliability or accuracy of the Intoxilyzer test result. Price's attorney objected to introduction of the Intoxilyzer test result into evidence on the ground that "it's been shown that the test was not fairly administered." The hearing officer received the test result in evidence, explaining:

"I find each crucial step was completed. The simulator temperature was noted and written on the test record a few seconds before the approved method states it should be done. I do not see how this could or would change the amount of alcohol recorded by the [I]ntoxilyzer found in Mr. Price[']s blood. I do not find the deviation fatal to the procedure."

Section 39-20-07, N.D.C.C., eases the requirements for admissibility of chem-

ical test results while ensuring that tests are fairly administered. *Salter v. Hjelle,* 415 N.W.2d 801 (N.D.1987). "Failure to abide by the Approved Method renders the accuracy and reliability of the test results doubtful without explanatory testimony by the State Toxicologist." *Schirado v. North Dakota State Highway Comm'r,* 382 N.W.2d 391, 392 (N.D.1986). "Absent testimony by the state toxicologist, the foundational requirement necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court." *Moser v. North Dakota State Highway Comm'r,* 369 N.W.2d 650, 653 (N.D.1985). All the requirements of § 39–20–07(5), N.D. C.C., "must be scrupulously met to ensure a uniform basis of testing throughout the State and fair administration." *Id.,* at 654. When there is a deviation from the State Toxicologist's approved method of conducting a test, a hearing officer cannot assume that the test was accurate. *Schirado v. North Dakota State Highway Comm'r, supra.* "[W]hen the State Toxicologist has established methods and procedures for conducting the requisite test, fair administration can be established only by proof that those methods were 'scrupulously' complied with or by expert testimony." *State v. Schwalk,* 430 N.W.2d 317, 323 (N.D.1988). This is not a case in which we can say with certainty that the testing officer's "deviation from the State Toxicologist's Approved Method … in no way could have affected the reliability and accuracy of the test results" [*Heinrich v. North Dakota State Highway Comm'r,* 449 N.W.2d 587, 589 (N.D.1989)] or "could not have substantially affected test results" [*Schwind v. Director, North Dakota Dep't of Transp.,* 462 N.W.2d 147, 152 (N.D.1990)].

■ Because Officer Ellefson deviated from the State Toxicologist's Approved Method and there was no expert testimony on the effect, if any, of the deviation on the accuracy and reliability of the Intoxilyzer test result, it has not been "shown that … the test was fairly administered" [§ 39–20–07(5), N.D.C.C.]. We conclude that the hearing officer should not have admitted the Intoxilyzer test result into evidence and we "find[ ] the evidence insufficient to warrant the conclusion reached by the … hearing officer." Section 39–20–06, N.D. C.C.

■ Relying on §§ 28–32–18 and 39–20–06, N.D.C.C., counsel for the Director has asserted that if we find "insufficient evidence to determine whether Officer Ellefson's procedure affected the test results [we] should remand the case to the Administrative Hearing Officer for additional evidence." We decline the invitation to remand. "The loss of driving privileges is not insubstantial and may entail economic hardship and personal inconvenience." *Kobilansky v. Liffrig,* 358 N.W.2d 781, 787 (N.D.1984). On the other hand, "[t]he state's interest in public safety is substantially served by the Commissioner's suspension procedures of those who drive while intoxicated." *Id.,* at 791. Those competing considerations demand that testing officers and hearing officers perform their tasks competently and efficiently. Section 39–20–06, N.D.C.C., provides that a suspension may not be stayed pending a decision on appeal. Price's driving privileges have now been suspended for nearly one year and he has borne the expense of one administrative hearing and two appeals. Under such circumstances, a remand to allow another opportunity to prove that Price's Intoxilyzer test was fairly administered, as required by § 39–20–07(5), N.D.C.C., would be palpably unfair.

The district court judgment affirming the administrative suspension of Price's driving privileges is reversed and the matter is remanded for restoration of Price's driving privileges.

VANDE WALLE and LEVINE, JJ., concur.

ERICKSTAD, Chief Justice, respectfully dissents.

I cannot conceive of how the slight deviation in the testing procedure in this case from the approved method of the state

toxicologist could have had an effect on the test results to the prejudice of Mr. Price. As the record is silent as to effect of the deviation, I think the public's interest in safe highways necessitates and justifies a remand for the receipt of evidence on this issue before the Department of Transportation rather than a remand for the restoration of Mr. Price's license. The risk to the public in not following such a procedure is too great to ignore and the minimal additional inconvenience to Mr. Price too slight to do otherwise.

MESCHKE, J., concurs.