**Blane Giles DING, Petitioner and Appellee,**

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

Civ. No. 910381.

Supreme Court of North Dakota.

April 23, 1992.

Gregory B. Gullickson (argued), Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for respondent and appellant.

Thomas M. Tuntland (argued), Mandan, for petitioner and appellee.

ERICKSTAD, Chief Justice.

The Director of the Department of Transportation appeals from a district court judgment reversing the Director's suspension of Blane Ding's driving privileges for ninety-one days. We reverse.

On April 25, 1991, Officer Stepp observed a white pickup in the First Street Southeast area of Mandan. When Stepp observed this pickup jump the curb and go back down onto the roadway, almost striking a parked vehicle, Stepp activated his lights but the pickup did not stop; instead, it turned onto Ninth Avenue Southeast. The pickup "pulled into" the driveway to Ding's home, and Ding exited the vehicle. He proceeded toward Stepp. Stepp observed him sway as he walked, and smelled the odor of alcohol. When asked if he had been drinking, Ding told Stepp that he had. Stepp then administered a series of field

sobriety tests which Ding inadequately performed. Stepp placed Ding under arrest for driving while under the influence, and took him to Mandan Medcenter One for a blood analysis.

At Mandan Medcenter One, Registered Nurse Mary Puffe extracted blood from Ding. This blood was placed in a vial which was part of a kit issued by the State Toxicologist. Stepp observed the extraction of the blood and its placement into the vial. Stepp filled in a Report and Notice Under Chapter 39–20 N.D.C.C. (Report and Notice Form), supplying information about Ding, the occurrence, type of specimen taken, and the Officer's Statement of Probable Cause. Stepp then signed the report dated April 25, 1991.[1] The blood was sent to the State Toxicologist for analysis.[2] The analytical report from the State Toxicologist found Ding's sample to be .21 percent blood alcohol by weight. Several days la-

ter, when Stepp received this information, he inserted the figure in the designated blank on the form he had previously signed. On May 17, 1991, he issued a temporary operator's permit to Ding.

A hearing was held at the Mandan Law Enforcement Center on June 4, 1991. At this hearing, Ding, in essence, argued that, as the Report and Notice Form was signed prior to the insertion of the blood alcohol content information, the Director did not have authority to act under section 39–20–04.1(1), N.D.C.C.,[3] because the Report and Notice Form was not properly certified. Section 39–20–03.1(3), N.D.C.C., requires that the law enforcement officer forward to the Director "a certified written report in the form required by the commissioner [director]," which is the Report and Notice Form.[4] The hearing officer made certain findings of fact[5] and conclusions of

1. Where the form requires the officer's signature, it states:
   "I personally certify as a law enforcement officer that this written report is true and correct to the best of my knowledge at the time of writing this report."

2. The accuracy or procedures applying to the test result are not challenged on appeal.

3. Section 39–20–04.1(1), N.D.C.C., reads in part: "After the receipt of a person's operator's license, if taken under section 39–20–03.1 or 39–20–03.2, and the certified report of a law enforcement officer and if no written request for hearing has been received from the arrested person under section 39–20–05, or if that hearing is requested and the findings, conclusion, and decision from the hearing confirm that the law enforcement officer had reasonable grounds to arrest the person and test results show that the arrested person was driving or in physical control of a vehicle while having a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a test within two hours after driving or being in physical control of a motor vehicle, the commissioner [director] shall suspend the person's operator's license as follows...."

4. In 1987 the legislature amended this statute, eliminating the need for a sworn report from the officer and requiring a certified report. This was done to eliminate the need for officers to have each report notarized by a notary public. *See* 1987 N.D.Laws 460 § 11.

5. The transcript of testimony of the Administrative Hearing of June 4, 1991, discloses the following findings of fact:

"... Officer Stepp was called to an area on another matter and then saw a driver, Mr. Ding, drive up over a curb and drive on a lawn. Then he almost hit a parked vehicle. Officer Stepp used his red lights and siren to try to stop Mr. Ding. He continued on to his home where he pulled into the driveway almost hitting a motorcycle. Mr. Ding stepped out of his vehicle and staggered when he walked toward Officer Stepp. He admitted having drank earlier after Officer Stepp detected the odor of alcoholic beverages about him. His eyes were red and watery. Mr. Ding did not follow the instructions during an eye test. He did not walk and turn as directed to. He missed the letters U, R, and X when saying his ABCs, and he missed his fingers when counting them. Officer Stepp then arrested Mr. Ding for driving while under the influence of intoxicating beverages, and had him submit to a chemical test of his blood. The test results showed that he had .21 percent blood content by weight...."

\* \* \* \* \* \*

"Mr. Tuntland questioned the certification of Officer Stepp's Report and Notice form. I find it was properly completed and had all the information that the commissioner [director] needed and as required by 39–20–03.2 subparagraph 3 of the North Dakota Century Code.

"He questioned the nurse's statement as being hearsay. 39–20–07 paragraph 10 allows a signed statement of the nurse as prima facie evidence without further foundation.

"I find that the gas chromatograph that was used in this case was approved, which had been questioned, and that is explained on Exhibit 5.

law,[6] and suspended Ding's license for ninety-one days. From the hearing officer's findings, it is clear that he believed that everything was properly completed and submitted under chapter 39–20, N.D.C.C. Ding appealed to the district court where his suspension was reversed, and the Director appeals to this Court.

■■■ On review of a license suspension, we review the agency's decision and not that of the district court. *Bryl v. Backes*, 477 N.W.2d 809, 811 (N.D.1991); *Schwind v. Director, Department of Transportation*, 462 N.W.2d 147, 149 (N.D.1990). Our review is limited to the record before the Department of Transportation. *Bryl*, 477 N.W.2d at 811. We do not consider the findings of the district court on review. *Id.*

■■ Our review is limited by section 28–32–19, N.D.C.C. Generally, we determine only whether or not: (1) The findings of fact are supported by a preponderance of the evidence. (2) The conclusions of law are supported by the findings. (3) The agency decision is supported by the conclusions of law. *Bryl*, 477 N.W.2d at 811. We do not substitute our judgment for that of the agency, but only determine if a reasoning mind could have determined that the factual conclusions were proved by the weight of the evidence presented. *Id.* (citing *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979)).

■ In this case there are no factual disputes, but Ding argues that because the Report and Notice Form was not complete when Officer Stepp signed it, it could not provide jurisdiction to the Director under North Dakota law. We disagree.

The legislature has established what is required before the state can revoke a person's driving privileges. Section 39–20–03.1, N.D.C.C., reads:

"If a person submits to a test under section 39–20–01, 39–20–02, or 39–20–03 and the test shows that person to have a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle, the following procedures apply:

1. The law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit if the person then has valid operating privileges, extending driving privileges for the next twenty-five days, or until earlier terminated by the decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the commissioner's [director's] official notification to the person of the commissioner's [director's] intent to revoke, suspend, or deny driving privileges in this state.

\*    \*    \*    \*    \*    \*

3. The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the commissioner [director] a certified written report in the form required by the commissioner [director] and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary opera-

---

"Exhibit 7A is a document that's filed with the clerks of court in each county and is part of the commissioner's [director's] regularly kept records. Its entry into this hearing is required by this North Dakota Supreme Court to make sure that the approved method was followed, andI find that it was.
"Exhibit 9, which was the test result, had proper foundation."

**6.** The transcript of testimony of the Administrative Hearing of June 4, 1991, discloses the following conclusions of law:

"... first of all, Officer Stepp had articulable grounds to stop and then to investigate Mr. Ding, and then he gained reasonable grounds to believe that Mr. Ding had violated 39–08–01 of the North Dakota Century Code. On the second issue, Mr. Ding was arrested. On the third issue, Mr. Ding was fairly tested. And on the fourth issue, Mr. Ding had over .10 percent blood-alcohol content by weight."

tor's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the person was lawfully arrested, that the person was tested for blood alcohol concentration under this chapter, and that the results of the test show that the person had a blood alcohol concentration of at least ten one-hundredths of one percent by weight. In addition to the operator's license and report, the law enforcement officer shall forward to the commissioner [director] a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood, saliva, or urine test for all tests administered at the direction of the officer."

The purpose of chapter 39–20 is to protect the public by preventing persons under the influence of intoxicants from driving. *Schwind v. Director, Department of Transportation*, 462 N.W.2d 147, 150 (N.D.1990).

In *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739 (N.D.1980), this Court stated:

"Proceedings under Chapter 39–20 of the North Dakota Century Code are civil in nature. The purpose of the implied consent law is to discourage individuals from driving an automobile while under the influence of intoxicants; to revoke the driving privileges of those persons who do drive while intoxicated; and to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication. To further this objective, the Implied Consent Act provides for civil administrative proceedings in appropriate instances. These proceedings are separate and distinct from the criminal proceedings which may ensue from the arrest of an offending motorist. A dismissal or acquittal of the related criminal charge is irrelevant to the disposition of the revocation proceedings."

*Asbridge*, 291 N.W.2d at 750.

Ding argues that because the Report and Notice Form was certified by Officer Stepp on April 25, 1991, and the blood analysis result was not available until several days later, the inclusion of that result on a form which had been previously certified, but not transmitted to the Director is error and strips the Director of jurisdiction of this case.

The Director argues that this procedure should not deprive the Director of jurisdiction. The Director argues that this information could be easily verified because the analytical test result form from the State Toxicologist is required to accompany the Report and Notice Form when it is transmitted to the Director. Also, the Director argues that there is trustworthiness from the fact that the same officer who originally completed the Report and Notice Form without the blood alcohol concentration being included, later filled in the blood alcohol concentration result.[7] The Director, in essence, asserts that this later inclusion of the result was obvious from the face of the form, and we detect no intent to deceive on the part of the officer. In our view, the Director should not be deprived of jurisdiction when all of the requirements of the statute have been met. The hearing officer heard the evidence, and, specifically, found that the report was "properly completed and had all the information that the commissioner [director] needed and as required by 39–20–03.2 subparagraph 3."[8]

The inclusion of the test result from the State Toxicologist is required in the form;

7. In response to questioning about the blood result being received after the Report and Notice Form had been certified, Officer Stepp testified at the hearing that it is procedure to include the result after completion. "So what we do is we indicate what the results came back as and also enclose a copy of the Analytical Report."

8. We recognize that section 39–20–03.2(3), N.D.C.C., referred to by the hearing officer relates to nonresident drivers. We believe that the hearing officer meant to refer to section 39–20–03.1(3), N.D.C.C., which relates to resident drivers.

however, the officer cannot independently determine in advance of the Toxicologist's analysis what the result is. The officer has merely inserted the result in the designated part of the Report and Notice Form when he received it from the State Toxicologist. That result is only as correct as the analysis from the State Toxicologist. Any certification of that result is based upon information received from the State Toxicologist, whereas the other information on the Report and Notice Form, particularly the officer's statement of probable cause, is within the personal knowledge of the officer completing it and, for reasons of accuracy, should be certified to at the time closest to the occurrence and the preparation of the statement.

■ We construe statutes to avoid ludicrous and absurd results when possible. *State v. Vavrosky*, 442 N.W.2d 433, 436 (N.D.1989); *State v. Grenz*, 437 N.W.2d 851, 854 (N.D.1989). We agree with the hearing officer's determination that the information required under the statute was provided to the Director. Officer Stepp completed the Report and Notice Form with the information he knew and then certified the report by his signature. He substantially complied with the requirements of the statute when he inserted the blood analysis result on the report he had previously certified. *See Retzlaff v. Grand Forks Public School District No. 1*, 424 N.W.2d 637, 640 (N.D.1988); *State v. Storbakken*, 246 N.W.2d 78, 83 (N.D.1976).

Although the certification as to test results should perhaps be separate from the other certification so that the officer could sign on different dates depending upon when the test results become available, we do not believe the officer's inability to do that in this case deprived the Director of jurisdiction.

We reverse the decision of the district court and affirm the decision of the Director.

MESCHE, J., and MAURICE R. HUNKE, District Judge, concur.

MAURICE R. HUNKE, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of GIERKE, J.

JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.

VANDE WALLE, Justice, concurring specially.

The issue in this case arises out of the fact the report was dated and certified prior to the receipt of the blood-alcohol level from the State Toxicologist. Section 39–20–03.1(3), NDCC, provides that the report is to be a "certified written report in the form required by the commissioner (director). . . ." The form prescribed by the Director contained the following statement: "I personally certify as a law enforcement officer that this written report is true and correct to the best of my knowledge at the time of writing this report."

The problem, of course, is that the "time of writing the report" is, presumably, the date it was signed. The officer did not know the blood-alcohol level at that time. However, as the majority opinion notes, the State Toxicologist, not the officer, is the person to determine the blood-alcohol level. Nevertheless, if the statement prescribed by the Director were "of the essence" I would agree with Ding. I believe, however, that the phrase "at the time of writing this report" is not essential. In this respect this case is akin to cases determining whether or not a blood-alcohol test was "fairly administered" in order that the results be admissible in accord with the provisions of section 39–20–07, NDCC. In cases such as *Moser v. North Dakota State Highway Com'r*, 369 N.W.2d 650 (N.D. 1985), we concluded that because section 39–20–07, NDCC, permits admission of evidence without expert testimony to establish accuracy and reliability, all the requirements of the statute must be scrupulously met to ensure a uniform basis of testing through the State and fair administration. We held that the foundational requirements needed to show that a breathalyzer test was fairly administered so as to render the results admissible could be met either

through testimony of the State Toxicologist or through the introduction of certified copies of approved methods and techniques filed pursuant to the statute. *See also, e.g., Wagner v. Backes,* 470 N.W.2d 598 (N.D.1991); *Price v. Dept. of Transp. Director,* 469 N.W.2d 560 (N.D.1991); *Glaspey v. Backes,* 462 N.W.2d 635 (N.D.1990); *State v. Schwalk,* 430 N.W.2d 317 (N.D. 1988).

On the other hand, where the variance from the directions of the State Toxicologist could not have substantially affected test results, and is administrative rather than scientific in nature, we have not applied the *Moser* rationale but have upheld the admission of the test results by the Director. *E.g., Schwind v. Director, Dept. of Transp.,* 462 N.W.2d 147 (N.D.1990) [officer rather than nurse checked the box on form which indicates whether or not the container seal on the blood kit canister was intact before use]; *Heinrich v. N.D. State Hwy. Com'n,* 449 N.W.2d 587 (N.D.1989) [officer's post-test correction of standard solution number could not have affected accuracy and reliability of intoxilyzer test results]; *Schense v. Hjelle,* 386 N.W.2d 888 (N.D.1986) [discrepancy in serial numbers identifying simulator could not have affected test results].

I would apply a similar rationale to the instant case. The completion of the form by inserting the blood-alcohol level received from the State Toxicologist after the form had been dated and signed could not affect the accuracy and reliability of the results. Although the form certified by the officer contains necessary information other than the test results, such as the officer's statement of probable cause, which is essential to the issues to be decided at the administrative hearing (*see* section 39–20–05, NDCC), the officer's completion of the certification prior to the date of receipt of the blood-alcohol level could not have affected that information. The officer did appear and testify at the administrative hearing. Furthermore, since the form was prescribed by the Director it is, as it is with the State Toxicologist in cases such as *Moser,* for that official to determine if the defect is of a nature to destroy the efficacy of the form. Although Ding attempts to cast the issue as one of jurisdiction, the receipt of the certified completed form provided the Director jurisdiction. Defects such as the one Ding magnifies in this case may be relevant insofar as admissibility and weight of evidence are concerned, but they are not jurisdictional. Indeed, such defects may not be apparent from the face of the form.

For the reasons stated herein, I concur in the result reached by the majority opinion.

LEVINE, J., concurs.